UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) **Laura O'Connor v Commonwealth of Massachusetts**

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   __ I.   160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

   **X** II.  195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,  *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

   __ III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

   __ IV.  220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
           690, 810, 861-865, 870, 871, 875, 900.

   __ V.   150, 152, 153.

   *stamp: 05 11407 NMG*

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES ☐   NO **X**

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

   YES ☐   NO **X**

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES ☐   NO **X**

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES ☐   NO **X**

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES **X**   NO ☐

   A. If yes, in which division do all of the non-governmental parties reside?

      Eastern Division **X**   Central Division ☐   Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

      Eastern Division ☐   Central Division ☐   Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES ☐   NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME **ADERONKE LIPEDE**
ADDRESS **105 Union Wharf Boston, MA 02109**
TELEPHONE NO. **(617) 742-9424**

(CategoryForm.wpd -5/2/05)

≈JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
LAURA O'CONNOR

(b) County of Residence of First Listed Plaintiff: Plymouth
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
ADERONKE E. LIPEDE
105 Union Wharf
Boston, MA 02109  (617) 742-9424

## DEFENDANTS
Commonwealth of Massachusetts Department of Mental Retardation

County of Residence of First Listed Defendant: SUFFOLK
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known): 05 11407 NMG

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / Habeas Corpus: | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | / ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | | | |
| | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C § 2000e-2 and 42 U.S.C § 12101

Brief description of cause: Plaintiff files an action of discrimination on the basis of gender and a violation of the Americans with disabilities against employer Commonwealth of Massachusetts-DMR.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE
DOCKET NUMBER

DATE: 7-5-05
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

UNITED STATES DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

| | |
|---|---|
| LAURA O'CONNOR )<br>　　Plaintiff, )<br>　　　　　　　　　　　　)<br>　　　　　　　　　　　　)<br>v.　　　　　　　　　　 )<br>　　　　　　　　　　　　)<br>COMMONWEALTH OF )<br>MASSACHUSETTS　　　)<br>DEPARTMENT OF　　　)<br>MENTAL RETARDATION, )<br>　　Defendant.　　　　　)<br>　　　　　　　　　　　　) | CIVIL ACTION NO.<br>05 11407 NMG<br>RECEIPT # 65356<br>AMOUNT $<br>SUMMONS ISSUED<br>LOCAL RULE 4.1<br>WAIVER FORM<br>MCF ISSUED<br>BY DPTY. CLK.<br>DATE |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

Plaintiff Laura O'Connor hereinafter ("Ms. O'Connor") files this civil action for money damages against her employer Defendant the Commonwealth of Massachusetts through its governmental agency, the Department of Mental Retardation (hereinafter "DMR") alleging claims of unlawful discrimination on the basis of Ms. O'Connor's gender in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C.§ 2000e-2 and a failure to accommodate Ms. O'Connor's work-related injury in violation of the Americans with Disabilities Act, 42 U.S.C, §12101, et seq.

### Jurisdiction

1.　　Jurisdiction of this action arises under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2, et seq and the American with Disabilities Act, 42 U.S.C. § 12101, et seq.



### Venue

2. Venue is proper in this court as this is the judicial district in which the relevant events occurred.

### Parties

3. Plaintiff Laura O'Connor is an individual residing in Middleboro, Plymouth County, Massachusetts.

4. Defendant the Commonwealth of Massachusetts Department of Mental Retardation ("DMR") is a state governmental agency within the Executive Office of Health & Human Services of the Commonwealth of Massachusetts and is a "person" subject to suit in a Title VII action as defined by 42 U.S.C., § 2000e(a).

### Facts

5. Ms. O'Connor has been employed with the DMR since 1994 as a Quality Enhancement Specialist in Region V, which encompasses Southeastern Massachusetts.

6. As a Quality Enhancement Specialist Ms. O'Connor conducts surveys to ensure compliance of DMR care providers with regulations issued by the Department of Public Health.

7. Paul Clifford ("Mr. Clifford"), formerly the Region V Director of the Office of Quality Enhancement, served as Ms. O'Connor's direct supervisor from 1994 to October 2000.

8. Throughout his tenure as Ms. O'Connor's direct supervisor, Mr. Clifford discriminated against Ms. O'Connor on the basis of her gender and in doing so created a misogynistic, intimidating, hostile, offensive, and humiliating work environment.

9. During his tenure as Ms. O'Connor's supervisor, Mr. Clifford routinely and publicly demeaned and humiliated Ms. O'Connor and other females under his supervision. On numerous occasions, Mr. Clifford engaged in verbal tirades laced with profanity that were so severe and offensive in nature that Ms. O'Connor and other females in the work group were reduced to tears.

10. Mr. Clifford also extended preferential treatment to males over females within the workgroup.

11. Mr. Clifford inequitably distributed the workloads on the basis of gender which resulted in Ms. O'Connor and other females within the work group assuming heavier workloads than the males within the work group.

12. The inequitable work distribution is demonstrated by the fact that Mr. Clifford assigned Ms. O'Connor and other females in the workgroup to surveys which were more complex and required more extensive travel. Significantly, the females in the work group were disproportionately assigned to the task of team leader of the various surveys, which required more work and responsibility.

13. Mr. Clifford also extended preferential treatment to males over females in his enforcement of workplace policies. For instance, on April 6, 2000, Mr. Clifford advised everyone within the work group that no one could work from home. Notwithstanding this directive, Mr. Clifford allowed some males to work from home due to childcare issues, while refusing to allow females the same privilege.

14. Mr. Clifford admitted that on several occasions that he assigned various women within the work group to leadership roles in surveys because of their looks with the

expectation that their "looks would distract" male executive directors who were the subject of such surveys.

15.   During a staff meeting on April 6, 2000 and numerous other occasions, Mr. Clifford actually told a female in the presence of others to wear a short skirt when conducting a survey.

16.   Also, Mr. Clifford often called Ms. O'Connor and other females into his office for long drawn out consultations. When a female was in his office, he would draw the shades down and engage in conversations that were personal in nature and unrelated to work. On the other hand, on the rare occasion when Mr. Clifford called males into his office, he did not draw the shades down, and engaged in brief consultations with males over work-related issues.

17.   Also, Mr. Clifford on several occasions called Ms. O'Connor and other females at home to discuss work issues during peak family time hours. More often than not, Mr. Clifford would strike up conversations over the phone with females about personal matters  Again, Mr. Clifford rarely called male workers at home.

18.   Mr. Clifford also failed to accommodate Ms. O'Connor's work-related injury that she sustained on November 2, 1998.

19.   On November 2, 1998 Ms. O'Connor sustained a badly fractured ankle in a work-related accident. The injury to Ms. O'Connor's ankle was so severe that she remained in a cast and could not drive for over a year.

20.   During a meeting on October 26, 1999, Mr. Clifford humiliated Ms. O'Connor when he demanded that her co-workers sign a sheet to volunteer to drive Ms. O'Connor to and from work because she could not drive. Mr. Clifford made this request without

4

first consulting Ms. O'Connor as to whether she even wanted her co-workers to drive her back and forth to work.

21. In response to Mr. Clifford's demands, several of Ms. O'Connor's co-workers signed up to drive Ms. O'Connor; however, approximately three time slots were not filled. Mr. Clifford declared that meeting would not proceed unless all of the time slots were filled.

22. As Ms. O'Connor had not requested Mr. Clifford to draft her co-workers to drive her to and from work, Ms. O'Connor was publicly humiliated by Mr. Clifford's conduct in October 1999, and during the meeting requested him not to discuss her injury as if she were not present in the room.

23. The next day on October 27, 1999, Mr. Clifford admonished Ms. O'Connor because she objected to his public humiliation of her at the staff meeting, and warned her that she "bit that hand that fed her." This statement was an obvious reference to Mr. Clifford's ability to make life difficult for Ms. O'Connor in the workplace.

24. On April 6, 2000, during a staff meeting, Mr. Clifford engaged in one of his numerous verbal tirades for one and a half hours. At the meeting, Mr. Clifford yelled, screamed, swore, called everyone names, pounded the table and "demanded an action plan regarding how [people in the work group] were going to stop lying, screwing the system, and win back his trust." To the surprise of Ms. O'Connor and others, Mr. Clifford further stated, that "now [he] knew what it was like to be retarded and that [the work group] would be thrilled to know he had a brain scan and that he was not brain dead."

25.  Mr. Clifford specifically threatened "to go after each and every person" who repeated what took place at the April 6, 2000 meeting.

26.  On April 13, 2000, Ms. O'Connor other female co-workers met with June Rowe, ("Ms. Rowe"), Director of Survey & Certification, and Gail Grossman ("Ms. Grossman"), Deputy Assistant Commissioner Office of Quality Management, to discuss the April 6 meeting as well as the history of Mr. Clifford's abusive and discriminatory conduct.

27.  During the meeting with Ms. Rowe and Ms. Grossman, Ms. O'Connor expressed concerns over the stress level in the workplace caused by Mr. Clifford's frequent outbursts as well as her concern for her safety due to Mr. Clifford's erratic and threatening behavior.

28.  Mr. Clifford's erratic and discriminatory conduct was well known to the DMR prior to Ms. O'Connor's complaint filed in April 2000. In fact, prior to Ms. O'Connor's complaint, two members of the team left largely due to Mr. Clifford's behavior.

29.  Ms. Grossman stated that she had spoken with Mr. Clifford and he admitted that he made some of the statements at the April 6, 2000 meeting. Ms. Grossman stated that Mr. Clifford was angry that the group had not met with him prior to reporting his conduct to Ms. Grossman and Ms. Rowe.

30.  Despite the written and verbal complaints in April 2000 regarding Mr. Clifford, Ms. Grossman and Ms. Rowe permitted Mr. Clifford to remain in his supervisory role over Ms. O'Connor and the others in the group, and the atmosphere in the work group became extremely tense.

31. Surprisingly, neither Ms. Grossman nor Ms. Rowe reported Mr. Clifford's conduct to more senior officials at DMR, nor did they take steps to commence an investigation into Mr. Clifford's behavior. Because neither Ms. Grossman nor Ms. Rowe took any remedial action against Mr. Clifford, Ms. O'Connor and other females in the work group were forced to file a grievance on April 20, 2000 with the union based upon Mr. Clifford's conduct.

32. In early 2000, Ms. O'Connor received medical clearance to drive short distances as long distance driving could cause swelling to her injured foot. Ms. O'Connor reminded Mr. Clifford of her driving limitations.

33. In May 2000, Mr. Clifford, however, ignored Ms. O'Connor's medical limitations and assigned Ms. O'Connor to a survey in Hopedale, MA, which is approximately one and half hours away from her home in Middleboro.

34. In June 2000, Mr. Clifford assigned Ms. O'Connor to a survey in Worcester approximately 1.5 hours from her home. Ms. O'Connor requested reassignment from the survey in Worcester as she suffered excruciating pain traveling back and forth to Hopedale in May 2000.

35. Ms. O'Connor worked in the New Bedford office. On numerous occasions she requested Mr. Clifford to transfer her to the DMR office in Carver, MA because it was closer to home.

36. In the April 6, 2000 meeting Mr. Clifford announced that the entire work group would be relocated to Carver. On April 24, 2000, Mr. Clifford advised Ms. O'Connor to hold on to her office space in New Bedford.

37. On May 14, 2000 when Ms. O'Connor arrived at the Carver office, she learned that Mr. Clifford had eliminated the desk assigned to her in the Carver office. Mr. Clifford advised her that she could use a desk at Carver if it was available, but she would remain in the New Bedford office.

38. Mr. Clifford's refusal to assign Ms. O'Connor to a permanent work space in Carver was particularly egregious because the Carver office was closer to her home in Middleboro and would reduce the driving time on her broken foot.

39. Mr. Clifford's refusal to transfer Ms. O'Connor to the Carver office is tantamount to a failure to grant Ms. O'Connor a reasonable accommodation to her disability (her fractured foot) in violation of the Americans with Disabilities Act.

40. Mr. Clifford's refusal to transfer Ms. O'Connor to the Carver office also demonstrates gender discrimination given that he freely accommodated men with personal issues, i.e. working at home due to childcare issues, but refused to allow Ms. O'Connor to transfer to Carver to accommodate her injured foot.

41. Mr. Clifford's refusal to transfer Ms. O'Connor to the Carver office clearly demonstrates his discriminatory preferential treatment of men over women to address personal issues.

42. On May 19, 2000, Dawn Doyle and Linda Hasouris, female co-workers of Ms. O'Connor, filed internal complaints with the DMR against Mr. Clifford.

43. On May 30, 2000, Ms. O'Connor filed an internal complaint with the DMR against Mr. Clifford alleging gender bias, overt sexual comments towards females and consistent mistreatment and verbal abuse of women.

44. According to the DMR's internal policies, any investigation concerning a complaint such as that filed by Ms. O'Connor on May 30, 2000 must be completed within six (6) weeks of the filing of the complaint.

45. In violation of its own policy, DMR completed its investigation of Ms. O'Connor's complaints in four (4) months instead of the required six (6) weeks.

46. On September 21, 2000, the DMR issued a report of its findings with respect to the complaints of Ms. O'Connor and Ms. Harhuis.

47. The DMR's internal investigation substantiated most of the charges in Ms. O'Connor's complaint against Mr. Clifford.

48. Specifically, the DMR's internal investigation substantiated Ms. O'Connor's charges that Mr. Clifford treated women differently than men in his work unit.

49. DMR's internal investigation substantiated Ms. O'Connor's claim that Mr. Clifford consistently mistreated women and verbally attacked them.

50. Also, the internal investigation confirmed that Mr. Clifford made inappropriate comments to women in the work group and that Mr. Clifford assigned the workload inequitably on the basis of gender.

51. It was not until October 20, 2000 that DMR took action to transfer Mr. Clifford to another department.

52. Notwithstanding DMR's notice in April 2000 and May 2000 of the complaints lodged by Ms. O'Connor and other females against Mr. Clifford, DMR permitted Mr. Clifford to continue in his supervisory capacity over Ms. O'Connor and others until October 20, 2000.

53. The DMR's delayed response to transferring Mr. Clifford was particularly troubling given that he had made a threat to go after each and person who complained about his conduct.

54. On October 20, 2000, DMR advised Ms. O'Connor and others that Mr. Clifford would be transferred from their Department.

55. On October 31, 2000, the DMR stated that Mr. Clifford would have minimal contact with Ms. O'Connor and the other complaining females.

56. Notwithstanding DMR's promise to limit Mr. Clifford's contact with Ms. O'Connor and others, on November 6, 2000, DMR sent an email inviting everyone in the department, including Mr. Clifford, to a retirement party of one of Ms. O'Connor's co-workers.

57. After his transfer from the Carver office, on November 16, 2000, Mr. Clifford appeared unannounced at the New Bedford office where Ms. O'Connor worked, despite DMR's promise that Mr. Clifford would have minimal contact with Ms. O'Connor and other females at the New Bedford office.

58. When Mr. Clifford appeared unannounced on November 16, 2000, Ms. O'Connor was emotionally traumatized and had to seek the assistance of another employee due to her fear of Mr. Clifford.

59. On February 6, 2001 an agenda was forwarded to Ms. O'Connor from the Region V staff meeting which addressed concern regarding the potential for running into to Mr. Clifford.

60. On February 7, 2001, Ms. O'Connor received her annual performance evaluation.

61.     DMR included negative comments in Ms. O'Connor's performance evaluation in retaliation for her filing a complaint with the MCAD and EEOC in December 2000.

62.     As a result of DMR's failure to take prompt action, Ms. O'Connor suffered severe emotional distress due to Mr. Clifford's discriminatory and abusive behavior.

63.     The actions of Mr. Clifford and defendant as his supervisor were intentional, malicious and/or done with reckless indifference to Ms. O'Connor's rights.

64.     Ms. O'Connor has been injured and has suffered financial as well as severe emotional injury as a result of the discriminatory acts of the Defendant.

65.     Ms. O'Connor has complied with all statutory requirements and conditions precedent necessary to maintain this action by filing a timely charge on December 7, 2000 with the MCAD and the EEOC.

66.     On March 8, 2004 the MCAD found probable cause to believe that Ms. O'Connor had, in fact, suffered discrimination on the basis of gender.

67.     On April 6, 2005 a Notice of Right of Suit was issued permitting Ms. O'Connor to file suit in federal court.

### COUNT I- DISCRIMINATION BASED ON GENDER
(Violation of 42 U.S.C., § 2000e-2)

68.     Ms. O'Connor repeats the allegations contained in paragraph 1 through 67 as if fully set forth herein.

69.     Ms. O'Connor is a member of a protected group in that she is a female.

70.     The conduct of Defendant represents, inter alia, intentional violations of 42 U.S.C.§ 2000e-2.

### COUNT II- RETALIATION
(Violation of 42 U.S.C., § 2000e-3(a))

71. Ms. O'Connor repeats the allegations contained in paragraph 1 through 70 as if fully set forth herein.

72. Ms. O'Connor filed a complaint with MCAD and EEOC on December 7, 2000.

73. Ms. O'Connor suffered adverse employment action as a result of engaging in protected of filing a complaint with the MCAD.

74. The conduct of the Defendant represents, inter alia, intentional retaliation in violation of 42 U.S.C. § 2000e-3(a).

### COUNT III- VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (Violation of 42 U.S.C, § 12101 et seq)

75. Ms. O'Connor repeats the allegations contained in paragraph 1 through 74 as if fully set forth herein.

76. Ms. O'Connor at all relevant was a qualified individual with a disability within the meaning of 42 U.S.C § 12111 101(8)

77. The conduct of the defendant represents, inter alia, intentional violations of the Americans with Disabilities Act 42 U.S.C. §12101 et seq.

### RELIEF SOUGHT

WHEREFORE, Ms. O'Connor prays that this Honorable Court:

1. Enter judgment against Defendant on Count I for compensatory damages punitive damages, reasonable attorney's fees, interest and costs.

2. Enter judgment against Defendant on Count II for compensatory damages punitive damages, reasonable attorney's fees, interest and costs.

3.  Enter judgment against Defendant on Count III for compensatory damages, punitive damages, reasonable attorney's fees, interest and costs. and

4.  Enter such other and further relief as the Honorable Court may deem just and necessary.

**THE PLAINTIFF LAURA O'CONNOR REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

                                      Laura O'Connor
                                      Plaintiff
                                      By Her Attorney

                                      Aderonke O. Lipede
                                      BBO # 567431
                                      105 Union Wharf
                                      Boston, MA 02109
                                      (617) 742-9424

Date: July 5, 2005